IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA

PREMIER COMP SOLUTIONS, LLC,

      Plaintiff,                             10cv1117
                                                         **ELECTRONICALLY FILED**
   v.

WORKWELL PHYSICAL MEDICINE, INC.
*trading and doing business as* WORKWELL,

      Defendant.

## MEMORANDUM ORDER

Before the Court is Defendant's Motion to Dismiss the Plaintiff's Amended Complaint pursuant to Fed.R.Civ. P. 12(b)(1), 12(b)(6), and 12(b)(7). Plaintiff, Premier Comp Solutions, LLC, brought this action against Defendant, WorkWell Physical Medicine, Inc., and in its Amended Complaint alleged Defendant violated the Lanham Act (Count I), engaged in business libel (Count II), engaged in unfair competition practices (Count III), and tortiously interfered with prospective business relationships (Count IV). See doc. no. 21.

Defendant contends that Plaintiff, in anticipation of Defendant filing a lawsuit against Thomas Mannering (a current employee of Plaintiff and a former employee of Defendant), Plaintiff filed this federal court lawsuit erroneously alleging violations of the Lanham Act solely to impose Federal Court jurisdiction. Defendant argues that Plaintiff has no viable Lanham Act claim, and because all of Plaintiff's other claims are pendant claims, the matter in its entirety must be dismissed for lack of subject matter jurisdiction. Alternatively, Defendant argues that the matter must be dismissed for failure to join an indispensible party, namely, Mr. Mannering. Finally, Defendant claims this matter is parallel to an action filed in the Court of Common Pleas

of Allegheny County (filed thirteen days after this case was filed), and thus, urges this Court to abstain from hearing this case.

For the reasons that follow, this Court will deny in part and grant in part Defendant's Motion to Dismiss.

## I. Background

The following facts are accepted as true for solely for the purposes of this Motion to Dismiss.

Plaintiff and Defendant are business competitors – both parties supply workers' compensation cost containment services to employers, but each business utilizes a different business model to deliver those services. Doc. no. 21, ¶¶ 7, 11, 14. One of the key distinctions between the businesses' models is that Defendant owns, operates, and /or manages clinics of medical services providers while Plaintiff does not. Doc. no. 21, ¶ 29. Plaintiff offers its customers the ability to use its network of providers in lieu of having to pay a PPO network, thereby giving its clients a unique cost savings. Doc. no. 21 ¶ 27.

In order to obtain new customers, Plaintiff makes presentations and offers proposals to prospective or "potential" clients. Doc. no. 21, ¶¶ 33-34. On May 10, 2010, Plaintiff hired Thomas Mannering, who last worked for Defendant in November of 2008, to work as an account executive and make presentations and offer proposals to prospective clients. Doc. no. 21, ¶ 35; Doc. no. 23, p. 1.

On August 2, 2010, Defendant sent a letter to approximately 131 companies located in Pennsylvania and around the country, and in the letter stated in relevant part:

> . . . I am writing to protect your interests and avoid confusion being created by a disgruntled former WorkWell employee. This individual, Tom Mannering, is contacting organizations currently working with WorkWell and identifying himself as a former employee of [WorkWell]. He is falsely claiming to provide

the same services provided by WorkWell on behalf of a new organization. **The information being used by Mannering and by proxy, his current employer, was obtained in violation of state trade secret protection laws.** WorkWell is currently pursuing action to eliminate this misuse of our confidential and proprietary information to prevent the confusion that may be caused by Mannering's spurious claims.

Doc no. 21, ¶¶ 37-40; doc. no. 21-2 (emphasis added).

Plaintiff alleges that these statements are false or misleading descriptions or representations of fact, which are likely to: (1) cause confusion, (2) cause mistake, or (3) to deceive the reader with respect to: (a) the affiliation, connection or association of Defendant with Plaintiff and/or Mannering, or (b) the origin, sponsorship, or approval of Plaintiff's or Mannering's services or Plaintiff's commercial activities. Doc no. 21, ¶¶ 41-52.

## II. Standard of Review

When a court considers a motion to dismiss for lack of subject matter jurisdiction under Federal Rule of Civil Procedure 12(b)(1), the first question is whether defendant is making a facial or factual jurisdictional attack. CNA v. U.S., 535 F.3d 132, 139 (3d Cir. 2008). In a facial jurisdictional attack, where defendant asserts that the allegations of the complaint are insufficient to establish jurisdiction, the court may only consider the allegations of the complaint, and must do so in the light most favorable to plaintiff. U.S. ex rel. Atkinson v. Pa. Shipbuilding Co., 473 F.3d 506, 513 (3d Cir. 2007). In a factual jurisdictional attack, where defendant argues that the court lacks jurisdiction based on evidence outside of the pleadings, the court may "consider and weigh evidence outside the pleadings . . .". Id. at 514. The burden of proof is on the plaintiff to establish jurisdiction. Id. Thus, when presented with a factual 12(b)(1) motion, the court need only accept the plaintiffs' uncontroverted allegations as true, Cedars-Sinai Med. Ctr. v. Watkins, 11 F.3d 1573, 1583 (Fed. Cir. 1993)(citing Gibbs v. Buck, 307 U.S. 66, 72 (1939) and 5A Charles Alan Wright & Arthur R. Miller, Federal Practice and Procedure §§ 1350, 1363, at 219-

20, 457 (2d ed. 1990)). In short, a facial attack concerns an "alleged pleading deficiency." CNA, 535 F.3d at 139 (citation and internal quotation omitted). A factual attack, however, concerns "the actual failure of a plaintiff's claims to comport factually with the jurisdictional prerequisites." Id. (citation and internal quotation omitted).

Based on the allegations set forth in the Defendant's Motion to Dismiss and Brief in Suppport, Defendant has made a factual attack under Fed. R. Civ. P. 12(b)(1), and thus, this Court is free to consider and weigh evidence outside the pleadings. It is on this standard that the Court has carefully considered Defendant's Motion (doc. no. 22) and Plaintiff's Response. Doc. no. 26.

### III. Discussion

As indicated above, Defendant moves this Court to dismiss the instant lawsuit primarily on the basis that this Court lacks subject matter jurisdiction. Fed.R.Civ. P. 12(b)(1). This Court, after careful review of the Amended Complaint, concurs that if no viable Lanham Act claim exists, the remaining pendant state-based claims must be dismissed since this Court will be divested of subject matter jurisdiction. Based on the foregoing law and authority, this Court finds that the Lanham Act claim advanced by Plaintiff is viable.

**A. The Lanham Act**

At its core, the Lanham Act primarily addresses trademark protection. Plaintiff has sued Defendant for specifically violating Section 43 of the Lanham Act[1]. 15 U.S.C. § 1125.

---

[1] Section 43(a) states that: Any person who, on or in connection with any goods or services, or any container for goods, uses in commerce any word, term, name, symbol, or device, or any combination thereof, or any false designation of origin, false or misleading description of fact, or false or misleading representation of fact which – 1) is likely to cause confusion, or to cause mistake, or to deceive as to the affiliation, connection, or association of such person with another person, or as to the origin, sponsorship, or approval of his or her goods, services, or commercial activities by another person, or 2) in commercial advertising or promotion, misrepresents the nature, characteristics, qualities, or geographic origin of his or her or another person's goods, services, or commercial activities – shall be liable in a civil action by any person who believes that he or she is or is likely to be damaged by such act.

4

To establishing a prima facie case under § 43(a) of the Lanham Act for misrepresentation in commercial advertising or promotion, a plaintiff must prove that: 1) the defendant has made false or misleading statements as to his own or another's product in commercial advertising or promotion; 2) there is actual deception or at least a tendency to deceive a substantial portion of the intended audience; 3) the deception is material in that it is likely to influence purchasing decisions; 4) the advertised goods traveled in interstate commerce; and 5) there is a likelihood of injury to the plaintiff in terms of declining sales, loss of good will, etc. Warner-Lambert Co. v. BreathAsure, Inc., 204 F.3d 87, 91-92 (3d Cir. 2000).

Here, the parties disagree as first as to whether the Lanham Act – specifically Section 43(a) of the Act – applies to this matter. Specifically, the parties disagree as to whether Defendant's letters are "commercial advertising or promotion" as intended by the Lanham Act. The Court notes that the Lanham Act – while primarily concerned with trademark matters – was modified in 1988 and Section 43(a) was then amended. Since 1988, the United States Court of Appeals for the Third Circuit has not had the opportunity to comment on the implications of the amended version Section 43(a). 15 U.S.C. § 1125(a)(1)(B).[2]

However, since being amended, several district courts within the Third Circuit have tackled the issue of whether the representations constitute "commercial advertising or promotion." These district courts have adopted a four-part test set forth in Seven-Up v. Coca-Cola Co., 86 F.3d 1379 (5th Cir. 1996), to determine whether representations are commercial

---

[2] Section 43(a) of the Lanham Act as codified at 15 U.S.C. 1125 reads in pertinent part:
(a) Civil action
    (1) Any person who, on or in connection with any goods or services, or any container for goods, uses in commerce any word, term, name, symbol, or device, or any combination thereof, or any false designation of origin, false or misleading description of fact, or false or misleading representation of fact, which—
        \*        \*        \*
        (B) in commercial advertising or promotion, misrepresents the nature, characteristics, qualities, or geographic origin of his or her or another person's goods, services, or commercial activities,
shall be liable in a civil action by any person who believes that he or she is or is likely to be damaged by such act.

advertising or promotion under the Lanham Act. See Caldon, Inc. v. Advanced Measurement & Analysis Croup, Inc., 515 F.Supp.2d 565, 578 (W.D.Pa. 2007) (adopting Seven-Up test); See also Pitney Bowes, Inc. v. ITS Mailing Systems, Inc., No. 09-05024, 2010 WL 1005146 (E.D.Pa. March 17, 2010); (referencing cases that adopt Seven-Up test); Synygy, Inc. v. Scott-Levin, Inc., 51 F.Supp.2d 570, 576 (E.D.Pa. 1999), aff'd 229 F.3d 1139 (3d Cir. 2000) (adopting Seven-Up test); and . Bracco Diagnostics, Inc. v. Amersham Health, Inc., 627 F.Supp.2d 384, 455-56 (D.N.J. 2009) (discussing the development of this definition).

This four-part test defines "commercial advertising promotion" as: (1) commercial speech; (2) by a defendant in commercial competition with the plaintiff; (3) for the purposes of influencing consumers to buy the defendant's goods or services; and (4) that is sufficiently disseminated to the relevant purchasing public to constitute advertising or promotion within the industry. Caldon, 515 F.Supp.2d at 578.

Three factors are used in determining whether speech is commercial: 1) is the speech an advertisement; 2) does the speech refer to a specific product or service; and 3) does the speaker have an economic motivation for the speech. U.S. Healthcare, Inc. v. Blue Cross of Greater Philadelphia, 898 F.2d 914, 933 (3d Cir. 1990) (adopting the United States Supreme Court's reasoning in commercial speech cases as stated in Bolger v. Youngs Drug Prods. Corp., 463 U.S. 60, 66-67 (1983)).

Based on the facts set forth in Plaintiff's Amended Complaint, and accepting them as true solely for the purposes of deciding this Motion to Dismiss, this Court finds that Plaintiff adequately pled that a violation of Section 43 of the Lanham Act occurred. Moreover, although this Court is not bound by the decisions of other district courts within the Third Circuit, this Court finds the decision of the United States District Court for the Eastern District of

Pennsylvania in Carpenter Tech. Corp. v. Allegheny Techs., Inc. to be particularly instructive and supportive of this Court's reasons to deny Defendant's Motion to Dismiss as to the Lanham Act claim. 646 F.Supp.2d 726 (E.D.Pa 2009).

In the Carpenter case, two companies – business competitors – manufactured nickel base alloy ingots. The defendant claimed it held a patent on the composition of these ingots. The defendant mailed a letter to the plaintiff as well as the plaintiff's existing and potential customers stating that the plaintiff was attempting to manufacture and sell a product patented by the defendant. The plaintiff sued the defendant claiming the defendant engaged in unfair competition in violation of the Lanham Act by advertising fraudulent patents to the plaintiff's existing and potential customers. The defendant filed a motion to dismiss claiming the plaintiff failed to raise a legally cognizable claim under the Lanham Act.

The district judge in the Carpenter case denied defendant's motion to dismiss because the letter questioned the legality of plaintiff's products and suggested that the defendant was a supplier of the same types of products. Id. at 737. Furthermore, the defendant allegedly sent the letter in order to discourage plaintiff's business and improve its own. Id. Because the plaintiff and defendant were market competitors and the letter constituted commercial speech, disseminated broadly with the intent to persuade buyers and discourage a competitor's business, the claim withstood the motion to dismiss.

Given the similarity of factual allegations found in the Amended Complaint currently before this Court, Defendant's 12(b)(6) Motion to Dismiss the Lanham Act claim will be denied. Accordingly, Defendant's 12(b)(1) argument also fails in light of the fact that Court has determined that Plaintiff's Lanham Act claim can survive Defendant's Motion to Dismiss.

**B. Indispensible Party**

Defendant next argues that Plaintiff's Amended Complaint should be dismissed for failure to join an "indispensable" party – namely Mr. Mannering. The primary factors to be considered by this Court in determining whether a party is indispensable are listed in Rule 19 of the Federal Rules of Civil Procedure as follows:

> (a) Persons Required to Be Joined if Feasible.
>
> > (1) Required Party. A person who is subject to service of process and whose joinder will not deprive the court of subject-matter jurisdiction must be joined as a party if:
> >
> > > (A) in that person's absence, the court cannot accord complete relief among existing parties; or
> > >
> > > (B) that person claims an interest relating to the subject of the action and is so situated that disposing of the action in the person's absence may:
> > >
> > > > (i) as a practical matter impair or impede the person's ability to protect the interest; or
> > > >
> > > > (ii) leave an existing party subject to a substantial risk of incurring double, multiple, or otherwise inconsistent obligations because of the interest.

Fed.R.Civ.P. 19. See also Field v. Volkswagenwerk AG, 626 F.2d 293, 297 (1980).

The Court of Appeals for the Third Circuit in McArthur v. Rosenbaum Co. of Pittsburgh, 180 F.2d 617 (3d Cir. 1950) succinctly described Rule 19's application in this fashion:

> The two tests, therefore, as to what constitutes an indispensable party are: (1) Is the interest of the alleged indispensable party such as will be directly affected legally by the adjudication? (2) Will the failure to join the alleged indispensable party be inconsistent with equity and good conscience?

180 F.3d at 621 -622.

Defendant here argues that Plaintiff's request for a declaration that Plaintiff did not utilize any proprietary, confidential or trade secret information belonging to Defendant would

affect Mannering's rights which are presently being adjudicated in a state court proceeding. The Court does not find this argument persuasive. Similarly, Defendant's argument that Mannering's absence from this lawsuit will "pose substantial risk" to Defendant of incurring inconsistent obligations given Mannering's presence in the state court proceeding, is equally unpersuasive.

Therefore, this Court will deny Defendant's Motion to Dismiss pursuant to Fed.R.Civ.P. 12(b)(7).

**C. Abstention**

Finally, in light of the state court proceedings, Defendant requested this Court abstain from hearing this action. The central issue herein is a state court issue – whether the statement that "the information being used by Mannering, and by proxy his current employer [Plaintiff], was obtained in violation of the state's trade secret protection laws."

In Younger v. Harris, 401 U.S. 37, 38 (1971), the United States Supreme Court enunciated a doctrine of abstention in the context of a pending state criminal proceeding, which has been extended to pending state civil proceedings. Pennzoil Co. v. Texaco, Inc., 481 U.S. 1, 2 (1987). Younger abstention is appropriate if: (1) there are ongoing state judicial proceedings, (2) that implicate important state interests, and (3) afford an adequate opportunity to raise federal claims. See Port Auth. PBA v. Port Auth. of N.Y. & N.J., 973 F.2d 169, 173 (3d Cir. 1992) (citing Schall v. Joyce, 885 F.2d 101, 106 (3d Cir. 1989)).

More recently, in Nationwide Mut. Fire Ins. Co. v. George V. Hamilton, Inc., 571 F.3d 299 (3d Cir. 2009) the Court of Appeals for the Third Circuit held:

> The Colorado River doctrine allows a federal court to abstain, either by staying or dismissing a pending federal action, when there is a parallel ongoing state court proceeding. See Colorado River Water Conservation District v. United States, 424 U.S. 800, 96 S.Ct. 1236, 47 L.Ed.2d 483 (1976). The doctrine is to be narrowly applied in light of the general principle that "federal courts have a strict duty to exercise the jurisdiction that is conferred upon them by Congress."

9

> Quackenbush v. Allstate Ins. Co., 517 U.S. 706, 716, 116 S.Ct. 1712, 135 L.Ed.2d 1 (1996); see also Colorado River, 424 U.S. at 813, 96 S.Ct. 1236 ("The doctrine of abstention, under which a District Court may decline to exercise or postpone the exercise of its jurisdiction, is an extraordinary and narrow exception to the duty of a District Court to adjudicate a controversy properly before it.") (internal quotation omitted). Whether abstention is appropriate is a two-part inquiry. The initial question is whether there is a parallel state proceeding that raises "substantially identical claims [and] nearly identical allegations and issues." Yang v. Tsui, 416 F.3d 199, 204 n. 5 (3d Cir.2005) (internal quotation and citation omitted). If the proceedings are parallel, courts then look to a multi-factor test to determine whether "extraordinary circumstances" meriting abstention are present. Spring City Corp. v. American Bldgs. Co., 193 F.3d 165, 171 (3d Cir.1999).

571 F.3d at 307-308.

To ascertain whether an action presents "extraordinary circumstances," this Court must consider: (1) in an *in rem* case, which court first assumed jurisdiction over the property; (2) the inconvenience of the federal forum; (3) the desirability of avoiding piecemeal litigation; (4) the order in which jurisdiction was obtained; (5) whether federal or state law controls; and (6) whether the state court will adequately protect the interests of the parties." Spring City, 193 F.3d at 171. As noted in Nationwide, "[n]o one factor is determinative; a carefully considered judgment taking into account both the obligation to exercise jurisdiction and the combination of factors counseling against that exercise is required." 571 F.3d at 308, citing, Colorado River, 424 U.S. at 818-19.

This is not an *in rem* matter and because both parties are principally located in Allegheny County, Pennsylvania, this federal forum is presumed to be convenient. Thus, the first two factors hold no importance here.

As to the third factor – the desirability to avoid piecemeal litigation – this Court does not believe that its abstention would create such litigation. In addition, considering the fourth and fifth factors, although this Court was the first to receive a filing in the matter, and first assumed jurisdiction, subject matter jurisdiction is predicated solely on

10

whether the Lanham Act applies under the circumstances described here. Although this Court has decided to deny Defendant's Motion to Dismiss insofar as whether the Lanham Act applies, based on the well-crafted allegations of the Amended Complaint and the law of other district courts within the Third Circuit, as noted above, the Court of Appeals for the Third Circuit has not had an opportunity to comment on the application of Section 43(a) the Lanham Act in situations like the one presently before this Court.

Moreover, because state law controls what this Court deems to be the central issue herein – whether "the information being used by Mannering, and by proxy his current employer [Plaintiff], was obtained in violation of the state's trade secret protection laws" – this case is basically a state court matter, at least initially. If Mannering, and by proxy Plaintiff, violated trade secret laws then Defendant may not have made false or misleading statements. Such a finding, in turn, may control whether Section 43(a) of the Lanham Act was violated.

Finally, the state court will adequately protect the interests of the parties on this key and central issue.

As a result, this Court will stay this case and administratively close this matter until the state court makes at least the initial determination of whether there was a "violation of state trade secret protection laws." The parties shall still comply with the existing ADR Stipulation and file a Joint Status Report upon a ruling by the state court (within three business days thereof) or by December 31, 2010, whichever occurs first. Counsel for Plaintiff should forthwith provide a copy of this decision to the appropriate state court judge.

An appropriate Order follows.

s/ Arthur J. Schwab
Arthur J. Schwab
United States District Judge

cc: All Registered ECF Counsel and Parties